DUNSTAN B. VERDELL, plaintiff in error, *vs*. ALEXANDER H. KETCHUM, defendant in error.

1. The defendant, a planter, wrote to T., who was one of a firm of commission merchants in Augusta, to send him two hundred bushels of corn, and he would arrange or settle for it. T. was a debtor of defendant's and it was defendant's interest to set off his debt against the price of the corn. Neither T. nor his firm having any corn, T. went to the plaintiff, telling him he was authorized to buy the corn for defendant, and purchased from plaintiff one hundred bushels on the credit of defendant. The corn was sent to defendant by a carrier, accompanied by a bill for it, in the name of T.'s firm against defendant, and with a letter from T. stating that he would find some corn on the boat, that he would have sent the whole, but corn was falling, and "we" are short of funds. He further said he would have to pay for the corn by the 25th, and urged the defendant to send the money as well as to send his cotton to the firm for sale. Soon after the bill became due, but before any settlement was made with T. or his firm, and after the corn was consumed, the plaintiff demanded payment from defendant, and informed him that the corn was bought on his credit. Neither T. nor his firm set up any claim to be paid and had no charge against defendant, and, as witnesses at the trial, declared they had no demand for it. The jury found for the plaintiff:

*Held,* that the verdict was right. If T. was the agent of the defendant the case is clear. If not, the corn was obtained from plaintiff by the fraud of T., and T., whether he sold it in his own name or in the name of his firm, could pass no better title than he had, except to a *bona fide* purchaser for value. This the defendant was not, in the sense of the law, as he received the corn, with a bill against himself for it in favor of T.'s firm, which he has not paid, and against which he has no demand, his set-off against T. not being a debt against the firm.

2. It was not error in the judge, in such a case, to refuse to charge that if defendant bought the corn *bona fide* from either T. or his firm, he was not liable.

3. When a judge refuses to make a charge on the ground that there is no evidence to support it, and then adds, if the jury believe there is such evidence, then I so charge. Such a charge is improper, but the party in whose favor it is made cannot complain of it.

4. When the verdict is right this court will not grant a new trial, for an error of the court not material to the merits of the cause.

Sale. Principal and agent. Set-off. Purchaser. Charge of court. New trial. Before Judge ANDREWS. Elbert Superior Court. March Term, 1872.

On the 13th of February, 1869, Ketchum brought complaint against Verdell for the recovery of $164 75, for one hundred bushels of corn, alleged to have been sold and delivered by said Ketchum to said Verdell, under the following state of facts: On the ...... day of November, 1866, Verdell wrote to one Enos A. Tate, then of Augusta, Georgia, to send him two hundred bushels of corn, and that he would arrange or settle with him for it when he came down to Augusta. The letter was sent down by Henry Fleming, a boatman and common carrier on the Savannah river, and was duly delivered at Augusta to said Tate. Tate was personally indebted to Verdell to an amount larger than the value of the corn, and that was the reason why he gave Tate the order. A few days after the order was given, Verdell received by Henry Fleming, the boatman and carrier, one hundred bushels of corn in sacks, accompanied by a bill for it, made out in the name of Tate & McCalla, for the same amount as that sued for, and a letter dated Augusta, Georgia, 4th December, 1866. The corn, bill of lading and letter, were

all delivered to Verdell by the carrier. The letter of Tate to Verdell says that he (Tate) sent in the neighborhood of one hundred bushels, and that he (Tate) would have sent the whole two hundred bushels, "but corn is falling at the north, and it will probably be lower in a few weeks; and also we are short of funds; all the ready money is out filling orders for farmers;" and also states, "I have to pay for the corn by the 25th of this month, and if you can raise the money, and have any way to send it, do so; also send us what cotton you can, for our means are limited, and what money we advance we expect it back inside of thirty days, or as soon as possible. I will send bill." Verdell never heard of Ketchum until the corn was used up. He never gave him any order; never had any business with him; sent back the sacks to Tate, as ordered by him. Verdell first heard of Ketchum in February, after the receipt of the corn. Ketchum then wrote to Verdell, demanding payment of the corn, which he refused, and alleged in his letter of reply to Ketchum's demand, that he would not pay him for it, because he did not know him in the transaction. Verdell says he never paid any one for the corn.

Henry Fleming proves the delivery of the corn, the bill in the name of Tate & McCalla, and the letter of Tate to Verdell. Does not know who delivered the corn at the wharf. Tate delivered it to him and told him to deliver the corn to Verdell. The letter for the corn was directed to Tate.

Ketchum introduced the testimony of himself, his clerk, C. A. Roberts, and the interrogatories of Enos A. Tate. Enos A. Tate swears that he received an order from Verdell some time in 1865 for some corn, quality not recollected, directed to him individually; that not being able to fill it, went to Ketchum and he agreed to do so. His instructions were to Ketchum to make out his bill and send it round, that he wished to send it to Verdell. Never saw the bill for the corn, though in January or February afterwards saw plaintiff's books, on which the bill was charged to Verdell, price, $1 60 as charged. Tate also testified that Ketchum did not look to him at first, but receiving Verdell's letter refusing to

Verdell *vs.* Ketchum.

pay, he then sued witness, but does not know what became of the case. That neither he nor his firm had any charge or claim against defendant for the corn.

Charles McCalla testified for Ketchum that he was a member of the firm of Tate & McCalla ; never saw the order from Verdell to Tate to buy the corn. Ketchum frequently sent to see if Mr. Tate had received the money for the corn from Verdell. Don't think it was customary for firms to buy and have goods charged to customers in the country when the orders were addressed to individual members of the firm. Verdell never ordered any other article from our firm that I know of. Knows nothing of the understanding between Tate and Ketchum. His firm had no charge or claim against defendant for the corn.

Plaintiff testified that on the 4th December, 1866, Tate ordered him to ship one hundred bushels of corn to Verdell and charge the same to Verdell, and said that he would be in Augusta on the following Christmas and pay for said corn ; the price per bushel was $1 60. Tate agreed to return the sacks. The first week in January, following the sale, wrote to Verdell in relation to the corn, and he replied that he received the corn as shipped. That he was informed by Tate at the time of the sale that he was authorized to procure the one hundred bushels of corn, and to have the same charged to Verdell. Never saw Verdell; never had any business transaction with him.

Charles A. Roberts testified : Tate called to buy the corn for Verdell ; corn was purchased by Tate for Verdell, and in his name, and says he was satisfied Verdell knew at the time in whose name the corn was bought by the bill, he having returned the sacks as per instructions accompanying the bill ; consequently must have received the bill or would not have known that the sacks were to have been returned ; bought on various representations of Tate of what were the contents of Verdell's letter, which witness says he never read.

The Court charged, in substance, that if Verdell received the corn, believing that it was Tate's, there was no assent, either expressed or implied, on the part of Verdell, and that, in

that event, there was no sale, and the use of the corn by him, under a misapprehension, was the use of another man's corn, because title had not passed out of Ketchum, on account of the want of the consent of Verdell to buy of him. That the use of the corn under a misapprehension on the part of Verdell could not divest Ketchum of the title to his corn. That it is the common case that one of two innocent parties must lose; that in any event Verdell must lose the collection of a debt or Ketchum must lose the price of the corn, and the law must decide which. That it must fall on Verdell. That if there was a contract of sale to him, by his express or implied assent, then he is chargeable under a contract to buy. That if there was no contract to buy, then there was no sale, and Verdell having used another man's corn, though under a misapprehension, should pay Ketchum, the true owner. And this the rather because all this litigation has been because Tate, though he may not have been the agent to buy of others, was the agent Verdell applied to, to send him corn. That failure in his duty was the cause of Ketchum's trusting Verdell, and Verdell's using the corn under a misapprehension. And so, whether Verdell used the corn under a contract or misapprehension, he should pay for it.

. The court was asked by defendant's counsel to charge: "If the jury believe, from the evidence, that Verdell was a *bona fide* purchaser of the corn, either from Tate, or Tate & Mc-Calla, though the sale and delivery to Tate, or to Tate & Mc-Calla by Ketchum, was procured by the fraudulent representations of Tate, such sale and delivery to Verdell by Tate will be protected in law." To which request the court replied to the jury, that it "would give the charge as requested, if the proof shows that Ketchum sold to Tate, or to Tate & Mc-Calla. But you must recollect whether, under the evidence, the sale was by Ketchum to Tate & McCalla or to Verdell."

" The court would also charge as requested if the proof was that there was a sale by Tate to Verdell. You will recollect if there was any proof of sale by Tate, or Tate & McCalla, to Verdell, or whether it was not of a sale by Ketchum rather

than by Tate & McCalla." Also, "the court cannot give the charge as requested, because it presupposes a state of facts not warranted by the evidence; but if they believe they are warranted—that Verdell bought of Tate, or Tate & McCalla, *bona fide*, the court charges as requested."

The jury having returned into court and asked for further instructions, the court charged, without further explanation or comment, as follows, to-wit: "If Verdell used the corn, and it was fraudulently obtained or not, Verdell must pay for it." "If he used Ketchum's corn, he must pay for it." To all of which defendant excepted.

The jury then retired and found a verdict for plaintiff. Verdell, by his counsel, moved for a new trial, and assigned each and all of the above stated charges and refusals to charge as error. The motion was overruled on all the grounds taken, and defendant excepted.

R. Toombs; E. P. Edwards, for plaintiff in error.

J. D. Mathews; H. A. Roebuck, for defendant.

McCay, Judge.

1, 2. For myself, I am disposed to the opinion that Mr. Verdell's letter to Tate was an authority to buy for him, and on his credit, two hundred bushels of corn. A letter is not to be interpreted so strictly as what purports to be a power of attorney, and if the person to whom it is directed acts upon it as an authority, the courts will interpret the letter very liberally in favor of the agency. A fair and liberal rule for interpretation is to examine the paper in the light of the circumstances, especially of the situation of the parties. Tate was one of a firm of commission merchants; their business was to buy and sell for others on commission. Tate had no corn to sell. Even his firm was avowedly engaged in filling orders by buying from others. It is, therefore, a fair construction that Tate was to buy the corn. The sale was not to be cash, since the letter itself promises to settle for it in the future. Under the authorities I have referred to, if Tate so

understood the letter and acted, he would be treated as the agent, and Verdell be liable to the plaintiffs for the corn. In such a case the vendor would not be affected by the state of accounts between the principal, Verdell, and his agent, Tate. Even a positive agreement between Tate and Verdell that Tate should pay for the corn would not protect Verdell, un- less he had paid before he knew that the plaintiff was unpaid and looked to him: See Kymer *vs.* Suercrap, 1 Campbell, 109; Spearing *vs.* DeGrave, 2 Vern., 643; and this is true even if the vendor did not know he was selling to the agent at the time of the sale, but gave the credit solely to the agent : Paley on Agency, 243. But we do not put our judgment on this ground of the construction of the letter. Assume all the defendant, Verdell, insists on, admit that Tate was not his agent, that he not only did not intend to make him his agent, but that there is nothing in the letter which, under the rule alluded to, would protect Tate and the plaintiff, from the folly or the crime of acting on it, what, then, is the state of the case? The corn was obtained from plaintiff by Tate, by false statements ; the sale was void and no title passed out of Ketchum to anybody. It remained Ketchum's corn. In Tate's hands he could bring trover for it. And if he could bring trover he could waive the *tort* and sue in assumpsit. Had Tate stolen the corn this right of action in favor of the plaintiffs would be unquestioned. In this state, even a sale by Tate in market overt would not defeat the right: Code, section 2639. The rule is different if the article be obtained by fraud, and has got into the hands of a *bona fide* purchaser : Code, section 2650. And this not on the ground that the fraudulent vendee can convey a better title than he has got, but, as the Code says, the third person "will be protected." The true owner will be estopped because, by his folly in allowing himself to be deceived, he has put into the power of a cheat to injure third persons. And that is just the point on which this case turns. When Verdell got this corn was he led to act, to take and consume the corn, so as that if the plaintiff recovers he, Verdell, will be made to do

Verdell *vs.* Ketchum.

something more than he *must* have done, any way.  It is said yes, because he thought he was buying the corn from Tate, and Tate being insolvent and in his debt, he did not expect to pay anybody for the corn.   I am not sure that this fact, even if it were true, would protect him against the true owner whom Tate had defrauded out of the corn.   There are many authorities that one who takes property in payment of a precedent debt, is not a *bona fide* purchaser for value, so as to protect him against the true owner.   Even a purchaser before due, of a promissory note without notice, if he takes it in payment of a precedent debt, has, by very high authority, been held not to be protected against equities in favor of the maker.   This court has held differently, and so our Code provides.  But this is on the ground that it is a high public policy to favor the negotiability of such paper.  The case presented by the defendant does not address itself very powerfully to the sense of justice of a court.   He is no worse off than he was before he got this corn.   True, it is suggested now, in argument, that perhaps he would never have given the order had he not intended to set-off his debt against it; but he said nothing of that in his letter.   Indeed, both in that first letter and subsequently, he indicates the contrary.   He well knew when he got the corn that it did not come to him as the corn of his debtor, and has no equities growing out of the transaction. To bring his case within the rules of law, and it is upon these rules only he can stand, since there are no equities in his favor, he must make it appear that this was his debtor's corn. Clearly, this is not so; and he knew this when he got it and used it.   True, he may not have known it was the plaintiff's, but he did know, by the very papers that went with it, that it was not his debtor's.

3, 4.  Upon the whole, we think the verdict right, and though the charge of the judge on a point upon which there was no evidence cannot be defended, yet, in this case, it did the defendant no harm, and there was clearly *no* evidence that the defendant had *bona fide* bought the corn from Tate.

Judgment affirmed.