FLOURNOY & EPPING *vs.* THE FIRST NATIONAL BANK OF JEFFERSONVILLE, INDIANA.*

1, 2, 3. It is not to be presumed that commissioners examine the wrong witness, though failing to return expressly that the one examined is the one named in the commission.  The return need not have a preamble or caption to the answers.  Though the place of execution must appear, it is sufficient to give the county and State, and if these can be ascertained from the return with due certainty, by reasonable construction, it will suffice.

4. The payee of an accepted bill, who has paid value to the drawer before maturity, is not concerned with the consideration as between drawer and acceptor.  He holds the bill unaffected by equities in favor of the acceptor against the drawer.

5. No evidence that payee held title as agent of the drawers; no presumption raised by the testimony received; and the testimony rejected was inadmissible.  The drawer can neither talk nor act away the payee's title, after the bill has become a subsisting debt between the payee and the acceptor.

6. A bank being the payee and owner of an accepted bill, is under no duty to the acceptor to apply funds, which the drawer has with it on general deposit, to payment of the bill.

*This case was published in 78 *Ga.*, page 222. The opinion of the court then contained the inaccuracies of twice using the word "acceptor" for "drawer;" and it is here reprinted, after proper correction.

7. Dealings in Indiana with a corporation alleged in the record to have been chartered by that State, are governed by its laws, and when attacked here for usury or the like, the provisions of such laws applicab'e to the transaction must be made to appear, or the attack will be ineffectual. .

February 1, 1887.

Interrogatories. Evidence. Witness. Negotiable Instruments. Laws. Comity. Corporations. Before Judge INGRAM. City Court of Columbus. July Term, 1886.

The First National Bank of Jeffersonville, Indiana, a corporation of that State, brought suit against Flournoy & Epping on an accepted draft, drawn by M. A. Sweeney & Brother on defendants, dated September 29, 1885, payable thirty days after sight, accepted October 14, made payable thirty days thereafter, and protested for non-payment November 16, 1885. This was endorsed by the drawers. The jury found for the plaintiff. The defendants made a motion for a new trial, and the following grounds of error, in substance, were set out therein :

(1) Because the court refused to sustain a motion in writing to suppress a set of interrogatories, on the grounds that it did not appear that the person who answered them was the same person who was mentioned in the commission, though having the same name; that no preamble to the answers appeared, nor did the place of execution. The answers were headed, " Georgia, Muscogee county," together with a statement of the case and the court in which it was pending. Then followed the answers signed by the witness. After them came the heading, " State of Indiana, Clark county," followed by a certificate, signed by the commissioners, that the foregoing answers were answered, subscribed and sworn to before them on July 2, 1886.

(2) Because the court rejected two letters from the drawers to the acceptors, dated July 11, 1885, offering certain terms as to the contract, a telegram from the drawers

(without date) accepting terms offered by the acceptors, and a letter, dated August 3, 1885, from the drawers, relating to the contract, and stating that they were responsible for their work and guaranteed satisfaction in all cases.

(3) Because the court rejected two telegrams from the drawers to the acceptors, dated September 3, 1885, to the Steam Barge Company, stating shipment of machinery, and one stating that there had been an unavoidable detention.

(4), (5) Because the court refused to allow counsel for defendants to ask one of them to detail a conversation between him and one of the drawers after the draft had gone to protest, or to allow the witness to be asked whether the member of the drawers' firm in that conversation said that plaintiffs owned the draft; the avowed object of the question being, to show that the drawers then owned the draft and claimed it, and offered to settle it, and did not claim that the draft was owned by the plaintiff or mention the plaintiff. The drawers were not sworn as witnesses in the case.

(6) Because the court rejected a letter from the drawers to the acceptors, dated December, 5, 1885, denying items of a bill claimed against them, but offering to make a certain payment and shipment as a settlement of that claim. The avowed object of this testimony was to show that the drawers recognized the Steam Barge Company in the contract, and to show that they then owned the draft after it was due.

(7), (8) Because the court refused to permit one of the defendants to testify that the machinery was not delivered according to contract with the drawers, and was not according to the specifications agreed on; that money had been laid out and the interest lost on it, and delay in running boats and consequent loss had accrued from the delay of the drawers to comply with their contract; and because the court refused to admit evidence of damages to defendants or the barge company, in which they were

interested, arising from the breach of contract by the drawers.

(9) Because the court admitted the interrogatories of the president of the plaintiff, touching plaintiff's connection with the draft, after having ruled out the above stated evidence; the defendants insisting that the testimony was not in rebuttal.

(10) Because the court refused to charge as follows: (1) "If it should appear from the evidence that plaintiff discounted the draft sued upon and gave Sweeney & Brother credit for the same on their books and upon the account of Sweeney & Brother with said plaintiff, and that, after said discount and the giving of credit to Sweeney & Brother, the said Sweeney & Brother continued to do business with said bank (plaintiff), and deposited enough money with said bank to pay all indebtedness of Sweeney & Brother due said bank, then said bank is not the legal owner of said draft sued on, and the draft would be the paper of Sweeney & Brother, and suit should be brought in the name of Sweeney & Brother, and not in the name of said bank." (2) "I charge you that when a bank discounts a draft or note for a customer, and the party whose draft or note is so discounted has a deposit account at the bank, the bank has no lien on the deposit of such customer until the discounted draft or note shall have become due and payable; but when such paper shall have become due and payable, then I charge you that the bank did have such a lien on the deposit account of such customer, to the extent of the amount of such discounted paper, and can hold enough of said customer's funds in their hands to pay said draft." (3) "I charge you further, that if you believe from the evidence that a draft was drawn, accepted and then discounted by the First National Bank of Jeffersonville, Indiana, and that said draft is the foundation of this action, and that the discount was at a greater rate of interest than seven per cent. per annum, by the so doing the title to said draft does not pass to the bank making

the discount, and that the plaintiff cannot maintain an action on the same."

(11), (12) Because the verdict was contrary to law and evidence.

The motion was overruled, and the defendants excepted.

GOETCHIUS & CHAPPELL; HATCHER & PEABODY, by brief, for plaintiffs in error.

PEABODY, BRANNON & BATTLE, for defendant.

BLECKLEY, Chief Justice.

1. A motion to suppress the interrogatories of a witness was overruled. It was based on three grounds: (1) The lack of anything to identify the witness examined with the witness referred to in the commission ; (2) the lack of a preamble to the answers; (3) failure to show the place of execution. As to the first ground, we have no means of deciding. The name of the witness examined is subscribed to the answers, and if the same name was inserted in the commission, as seems to be conceded, there is a fair presumption that the person referred to in the commission was the one examined. It is not likely that the commissioners examined the wrong witness. But the commission is not in the record, and, therefore, we cannot be sure of any mistake, if one was made. Neither are the interrogatories in the record.

If they gave the name and place of residence of a witness, and the witness examined bore that name and was examined at that place, that would be identification enough in the absence of any circumstance to cause distrust of the fairness or accuracy of the commissioners. That they examined a different person from the one whom the commission authorized them to examine, is surely not to be presumed. Their failure to certify expressly to the identity is no substantial omission, for it is no less their duty to

examine the right person, and no other, when they do not certify, than when they do. And if they were faithless enough, or reckless enough, to examine one man in place of another, they would not be apt to hesitate about certifying. There is no statute or rule of court which requires any certificate of identity, though such a statement in the return is usual and very proper.

2. The same observation applies to caption or preamble. It is usual to have something of the sort prefixed to the answers, but this is not amongst the essentials of execution. Code, §3888.

3. It is requisite that the place of execution appear; and so, we think, it does in this instance. Immediately under the words, " State of Indiana, Clark county," the commissioners declare that the interrogatories and cross-interrogatories were answered, subscribed and sworn to before them. The proper construction is, that all this occurred in Clarke county, Indiana. 73 *Ga.* 386.

The heading of " Georgia, Muscogee county," is coupled with a statement of the case, and means simply to give the State and county in which the action was pending. When the whole document is construed together, there is not a trace of ambiguity.

4. The action was upon a bill of exchange, and was by the payee against the acceptors. The pleas were, not indebted, set-off, and recoupment. The pleas of set-off and recoupment went upon the theory that the bill was the property of the drawers, and that the payee was their agent, seeking to collect for their benefit; or, at all events, that the payee was affected by the equities subsisting between the drawers and the acceptors in regard to the consideration of the acceptance. That consideration was the final instalment of the price of certain machinery which the drawers had sold and shipped to the acceptors, prior to the date of acceptance, and which, save as to the amount of the bill, had been paid for. The pleas, taken together, alleged a breach of contract as to this machinery in two

particulars: First, it was imperfect and incomplete, and not suitable to the purpose for which it was sold and warranted. Secondly, it was delivered two months later than the time stipulated in the contract. From the former of these causes, the acceptors incurred certain specified expenses, which would have been saved to them if the contract had been complied with. These expenses, amounting to something more than half the face of the bill, were pleaded as a set-off. The delay to deliver resulted in deferring the completion of a certain steamboat on which the machinery was to be used, and in preventing the defendants and the steamboat company, in which they were interested, from engaging in business for a period of eight months, to their damage nearly twice the face of the bill. This damage they offered and prayed to recoup.

It appeared from the evidence that the bill was drawn at Jeffersonville, Indiana, and sent by the payee, a bank there situated, to Columbus, Ga., for acceptance, and after acceptance was returned to the bank, and by it discounted, the drawers indorsing in blank, and receiving credit in their account with the bank for the amount of the bill, less the discount. The acceptance matured thirty days after October 14th, and was discounted on the 16th of October.

The effect of accepting a bill is to acknowledge that the drawer has funds in the hands of the acceptor applicable to its payment, and the payee is entitled to repose with absolute trust and confidence upon that admission, and is under no duty to inquire further. If the admission proves injurious, he who made it must take the consequences. What has the payee to do, after parting with his money on the faith of the acceptance, with the state of the accounts between drawer and acceptor? Nothing whatever. The acceptor is the party primarily liable, and his dealings about consideration for acceptance are with the drawer; the payee's dealings are also with the drawer. If the payee gives value to the drawer, and acquires the bill in due course of trade before maturity, he is entitled to all the

protection which commercial law can afford to the most favored class of creditors.

5. The evidence before the jury did not raise the slightest presumption of agency on the part of the bank for the drawers in the ownership of the bill. The evidence was all the other way, and that offered and excluded was altogether inadmissible for any purpose whatever. The drawer can neither talk nor act away the title of the payee after the bill has become a valid subsisting debt between the payee and the acceptor. 56 *Ga.* 559. Text of opinion near top of page. The bank never indorsed the bill in blank or otherwise, and never parted with the possession to anybody after discounting it.

6. The theory apparently suggested in argument that the bank, if it had funds of the drawers on general deposit, was bound to apply them to the payment of this bill, is wholly untenable. There is no such duty devolving upon the payee of a dishonored paper. It is the drawer that is surety for the acceptor, not the acceptor for the drawer. Nothing in the accounts between the drawers and the bank, set out in the record, casts the slightest shade of suspicion over the *bona fide* title of the bank to this bill; and with such title, the bank can sue either the drawers or the acceptors, or both, at its option.

7. Nor is the alleged usury either established by evidence or known to this court judicially. The plaintiff is alleged in the declaration to be a corporation created by the State of Indiana, and this allegation is denied neither by plea nor proof. The act of discounting this bill took place in that State, and what the laws of Indiana are in reference to discounts and usury was not shown to the court and jury below nor to this court. 57 *Ga.* 371. The case cited from 50 *Ga.* 70, was ruled upon the code, and related both to a Georgia corporation and a Georgia transaction.

Judgment affirmed.