The Atlanta Bridge and Axle Company v. The Merchants National Bank of Rome.

Where a debtor has transferred to his creditor the title and possession of personal property in pledge as security for the debt, and whilst it is thus held sells it by his agent to a third person, and the creditor delivers it to the purchaser by surrendering the bill of lading therefor, upon the faith of a draft drawn by the seller and accepted by the purchaser, the creditor, in an action against the purchaser on his acceptance, is not affected by any misrepresentation as to the quality of the property, made by the agent of the seller to the purchaser and acted upon by the latter in making the purchase. This is true whether the creditor had notice of the misrepresentation and of the defects in the property or not, it not appearing that the creditor took any part in making the contract of sale or inducing either the misrepresentation or the acting upon it.          *Judgment affirmed.*

April 27, 1892. By two Justices.

Acceptance. Debtor and creditor. Fraud. Before Judge Van Epps. City court of Atlanta. September term, 1891.

The Merchants National Bank of Rome sued the Atlanta Bridge & Axle Company upon two acceptances drawn by the Rome Rolling Mill Company by Edward

B. Hill, treasurer, at Rome, Georgia, on April 17, 1890, upon the bridge and axle company, one for $950, payable ninety days after date, the other for $193.87, payable five months after date, payable to the order of J. King, cashier, and accepted by the defendant. The defendant pleaded not indebted, and made two other pleas which were stricken upon demurrer. After the pleas were stricken, plaintiff introduced the acceptances in evidence without objection, and after a charge by the court the jury found a verdict for plaintiff. Defendant excepted to the decision sustaining the demurrer, and to the action of the court in submitting the cause to the jury with these pleas stricken, and in not permitting defendant to introduce evidence in support of these pleas.

The pleas were : And for further plea in this behalf defendant says that the acceptances were fraudulently procured from it by plaintiff as follows, to wit : About the middle of April, 1890, E. B. Hill, the treasurer of the Rome Rolling Mill Co. and agent to sell the product of said company, then in the custody and control of plaintiff and to which plaintiff had a qualified title, came to the business place of defendant in the city of Atlanta and proposed to sell a lot of some fifty thousand pounds of 3-4 round iron, which he said was controlled by plaintiff, and the proceeds of sale of which would go to plaintiff. Said Hill priced said iron at two cents a pound, and defendant, through its president W. B. Miles, stated to him that defendant needed about that amount of that class of iron for railroad trestle bolts, and that the purpose for which it was to be used required the very best quality of iron, and then and there exhibited to said Hill specimens of the iron defendant used and required. The said Hill, after examining said specimens which were of the best quality, said the iron he proposed to sell defendant was reworked iron and

fully equal in quality to that so shown him, and that if defendant would buy it he would have it cut into lengths suitable for the bolts defendant wanted it for. On these representations and conditions defendant accepted the order with the proviso that it should have ninety days in which to pay for it. Hill said that as the iron was controlled by plaintiff, it having a bill of sale to it, he would have to draw drafts for amount of invoice on defendant in favor of plaintiff, with bill of lading to plaintiff attached, which was agreed to. Afterwards defendant was notified that there was some sixty thousand pounds of said iron, and it agreed to take the excess on five months time. The drafts sued on, with bill of lading attached consigning said iron to Jack King, the cashier of plaintiff, were sent to defendant for acceptance, and it, relying on said representations, accepted said drafts before the iron arrived. When the iron came it was not of the quality represented, but was of a greatly inferior quality, and utterly unfit, not only for the purpose for which it was purchased, but for any other mechanical purpose, and moreover it was cut in such lengths that it cannot be used for any purpose but that of scrap-iron worth about forty cents a hundred pounds. As soon as defendant had an opportunity to inspect said iron, it notified said rolling mill company and plaintiff; and further notified plaintiff that it would not pay said drafts, the consideration therefor having failed. Said iron is now and has at all times been subject to plaintiff's order. Wherefore defendant says that said representations were false and fraudulent, and under the circumstances stated were made by said bank. It further says that plaintiff is not a *bona fide* and innocent holder for value of said acceptances, and did not receive the same without notice of the defect in said iron and defence on that ground, and that the consideration thereof has wholly failed; and this it is ready to verify.

CANDLER & THOMSON, by HARRISON & PEEPLES, for plaintiff in error, cited 27 *Ga.* 378; 54 *Ga.* 33; 75 *Ga.* 109; 1 *Ga.* 428; Code, §2199.

KING & ANDERSON, *contra*, cited Code, §§2785, 2787, 2788; 37 *Ga.* 70; 34 *Ga.* 498; 70 *Ga.* 578, 222; 79 *Ga.* 810; 33 *Ga.* 43; 52 *Ga.* 134; 16 Pet. 2; 2 *Id.* 170; 2 Rand. Com. P. §§461, 995; 3 *Id.* §1875.