Leonhardt v. Small.

LEWIS LEONHARDT & CO. *v.* W. H. SMALL & CO. et ·al.

(*Knoxville.*   September Term, 1906.)

1. **BILLS AND NOTES.** Bank purchasing sight drafts with bills of lading attached and receiving payment is not liable for breach of original contract of sale, when.

   A bank purchasing, for full value and in due course of trade, negotiable sight drafts drawn by the sellers of hay, in favor of themselves and against the buyers, to each of which is attached a bill of lading, is not a purchaser of the hay, and its presentation of the drafts for payment does not constitute a contract by the bank to sell the hay to the drawees, and the bank receiving payment of such drafts is not liable for the breach of the original contract of sale as to the quality of the hay.   (*Post, pp.* 155-166.)

   Cases cited and approved:  Hoffman v. Bank, 12 Wall., 181; Goetz v. Bank, 119 U. S., 551, 555, 556; Tolertson & Stetson Co. v. Bank (Iowa), 84 N. W., 930, 50 L. R. A., 779, 780; Arpin v. Owens, 140 Mass., 144; Flournoy v. Bank, 78 Ga., 222; Nowak v. Stone Co., 78 Ill., 307; Law v. Brinker, 6 Colo., 555; Hays v. Hathorn, 74 N. Y., 486; Shafer v. Bronenberg, 42 Ind., 89.

   Cases cited and distinguished:  Ochs v. Price, 6 Heisk., 484, 488; Bank v. Bank, 91 U. S., 92, 98.

   Cases cited and disapproved:  Landa v. Lattin, 19 Tex. Civ. App., 246; Finch v. Gregg, 126 N. C., 176; Haas v. Bank (Ala.), 39 South., 129, 1 L. R. A. (N. S.), 242; Searles v. Smith Grain Co. (Miss.), 32 South., 287.

2. **SAME. Same.** Purchase of bills of lading and in effect the · goods embraced therein by a national bank is ultra vires, and no consequent obligation is enforceable against it.

   If the purchase by a national bank of drafts is in fact a purchase of the bills of lading attached, and in legal effect a purchase of the goods covered by the bills of lading, then the

entire transaction is *ultra vires*, and no obligation arising therefrom can be enforced against the bank, and no recovery can be had by the drawees and original purchasers of the goods against the bank for the breach of the contract as to the quality of the goods. (*Post, pp.* 164, 165.)

U. S. Revised Statutes cited and construed: Sec. 5136.

Cases cited and approved: Marble Co. v. Harvey, 92 Tenn., 115; Bank v. Kennedy, 167 U. S., 365; Bank v. Hawkins, 174 U. S., 365.

3. **SAME.** Same. **Bank's restrictive, but surplusage, indorsement on all but three drafts to which bills of lading are attached · does not render the bank liable as to the bills attached to drafts not so indorsed.**

Where a bank, purchasing sight drafts drawn by the sellers of hay upon the buyers, indorses all the drafts but three with a statement that it is not responsible for the quantity, quality, or delivery of the goods covered by the bills of lading, such bank is not thereby rendered liable for inferiority in the contract quality of the goods covered by the three bills of lading, attached to drafts not so indorsed, because such indorsement is mere surplusage. (*Post, pp.* 166, 167.)

FROM KNOX.

Appeal from the Chancery Court of Knox County.— JOSEPH W. SNEED, Chancellor.

JOHN W. GREEN, for complainants.

SHIELDS, CATES & MOUNTCASTLE, for defendants.

Leonhardt v. Small.

Mr. Justice Wilkes delivered the opinion of the Court.

The complainants, Lewis Leonhardt & Co., brought this suit against W. H. Small & Co., of Evansville, Indiana, the Fourth National Bank, of Cincinnati, Ohio, and the Mechanics' National Bank, of Knoxville, Tennessee, to recover the sum of $300 damages for the breach of a contract which complainants made with W. H. Small & Co. to purchase from them ten car loads of No. 1 timothy hay. The facts reported by the court of chancery appeals are as follows:

The complainants, Lewis Leonhardt & Co., who reside in Knoxville, Tennessee, contracted to buy from W. H. Small & Co., who reside at Evansville, Indiana, ten car loads of No. 1 timonthy hay at $15 per ton f. o. b. cars at Knoxville. W. H. Small & Co. shipped ten car loads of timothy hay to Knoxville on bills of lading issued to their own order. They drew sight drafts on Lewis Leonhardt & Co., payable to themselves, and attached one of said bills of lading to each of said drafts. They sold all of said drafts to the Citizens' National Bank, of Evansville, Indiana, for full value, and in the due course of trade, and these drafts were sold in turn by said bank to the Fourth National Bank, of Cincinnati, Ohio, and by it to the Mechanics' National Bank, of Knoxville, Tennessee, for full value and in the due course of trade. The Mechanics' National Bank presented the drafts to Lewis Leonhardt & Co. for accept-

ance and payment, and they accepted and paid them all, and the drafts were delivered to them.

When Lewis Leonhardt & Co. unloaded the hay they discovered that it was not No. 1 timothy hay, and that it was worth $300 less than the hay they had contracted to buy. Thereupon they brought this suit and attached the money that they had paid to the Mechanics' National Bank on the drafts. They charged that the money belonged to W. H. Small & Co., and the Fourth National Bank, of Cincinnati, the Mechanics' National Bank, of Knoxville, and W. H. Small & Co., were all liable to them for the breach of the contract by W. H. Small & Co. to ship them No. 1 timothy hay, and they prayed for a decree against all of the defendants for said sum of $300. The court of chancery appeals finds as a fact that the money attached did not belong to W. H. Small & Co., but that it belonged to the Mechanics' National Bank when it was attached. Small & Co. never entered their appearance to this suit, and are not before the court. The complainants do not ask for a decree against them.

The chancery court and the court of chancery appeals have both rendered decrees against the Fourth National Bank, of Cincinnati, and the Mechanics' National Bank, of Knoxville, for $300 damages and costs, and the cause is now before this court upon defendants' appeal and assignments of error to the decree of the court of chancery appeals.

The theory of complainants, which was adopted by the

lower courts, is that when the defendant banks purchased said drafts they became the owners of the hay, and responsible for the performance of Small & Co.'s contract for its sale as to quality, quantity, and delivery, and are liable for damages to the purchaser for Small & Co.'s breach of the contract in any of said respects, although the drafts were negotiable, and said banks are innocent purchasers thereof, and on presentation to the drawees, Lewis Leonhardt & Co., they unconditionally accepted and paid drafts.

Complainants' contention is supported by the cases of *Landa* v. *Lattin Bros.*, 19 Tex. Civ. App., 246, 46 S. W., 48; *Finch* v. *Gregg*, 126 N. C., 176, 35 S. E., 251, 49 L. R. A., 679; and *J. C. Haas & Co.* v. *Citizens' National Bank,* supreme court of Alabama, reported in 39 South., 129, 1 L. R. A. (N. S.), 242; *Searles* v. *Smith Grain Co.* (Miss.), 32 South., 287.

The case of *Finch* v. *Gregg,* 126 N. C., 176, 35 S. E., 251, 49 L. R. A., 679, did not meet the approval of the annotators of that valuable set of reports, and many cases are cited to show that the rule laid down in the case is unsound and out of line with the great weight of authority, and he concludes his notes and criticism as follows:

"From these cases, all of which hold that after a draft attached to a bill of lading is accepted the consignee becomes absolutely liable on the acceptance, and that after payment thereof is made he cannot recover it back, notwithstanding any failure of consideration between him

and the drawer, it would seem that the decision in the main case, and in *Landa* v. *Lattin Bros.*, 19 Tex. Civ. App., 246, 46 S. W., 48, supra, were based on a wrong principle, and that, if the right principle had been considered, the decisions must have been different."

The American & English Encyclopedia of Law, citing many cases in support thereof, lays down the true rule in these words:

"The payee of a bill of exchange occupies in relation to the acceptor the position of a *bona fide* holder, and, therefore, between the payee and acceptor, no want, failure, or other defect of consideration existing between the drawer and the acceptor, can be shown.

"And this is true although the drawee has been induced to accept the bill by means of a fraud, such as attaching thereto a forged or fraudulently altered security or bill of lading."

See 4 Am. and Eng. Ency. of Law (2d Ed.), 198, 199, and authorities there cited.

In the case of *Christian J. Hoffman et al.* v. *National City Bank of Milwaukee*, 12 Wall. (U. S.), 181, 20 L. Ed., 366, the supreme court of the United States, speaking upon this subject, said:

"Where bills of exchange were drawn, accompanied with forged bills of lading, and were discounted by a bank, and subsequently accepted and paid by the acceptors, they cannot recover back from the bank the money paid by them, on the ground of the forgery of

Leonhardt v. Small.

the bills of lading, of which the bank was ignorant at the time of their discount.

"Proof that the bills of lading were forgeries could not operate to discharge the liability of the acceptors to pay the amounts to the payees or their indorsees, where the payees were ignorant holders, having paid value for the same in the usual course of business.

"It is immaterial, in that regard, whether the bills were accepted while in the hands of the drawer and at his request, or whether they had passed into the hands of the payee before acceptance, and were accepted at his request."

In the case of *Goetz* v. *Bank of Kansas City*, 119 U. S., 551, 7 Sup. Ct., 318, 30 L. Ed., 515, a bank discounted several drafts with bills of lading attached. The consignee, after accepting and paying several of the drafts, discovered that the bills of lading were forged, whereupon he refused to pay one draft which he had accepted, and sued to recover the amount of the drafts which he had paid. The court held that the bank did not, by discounting the drafts or by indorsing the invoices accompanying the bills of lading "for collection," guarantee the genuineness of the bills of lading, and that its right to recover on the acceptances was not defeated by the mere failure to inquire into the consideration of the drafts because of rumors or general reputation as to the bad character of the drawer. Speaking directly upon the question involved in the case at bar, the supreme court of the United States said:

"A bank in discounting commercial paper does not guarantee the genuineness of a document attached to it as collateral security. Bills of lading attached to drafts drawn as in the present case are merely security for the payment of the drafts. The indorsement by the bank on the invoices accompanying some of the bills 'for collection' created no responsibility on the part of the bank; it implied no guaranty that the bills of lading were genuine; it imported nothing more than that the goods, which the bills of lading stated had been shipped, were to be held for the payment of the drafts, if the drafts were not paid by the drawees, and that the bank transferred them only for that purpose. If the drafts should be paid, the drawees were to take the goods. To hold such indorsement to be a warranty would create great embarrassment in the use of bills of lading as collateral to commercial paper against which they are drawn." 119 U. S., 555, 556, 7 Sup. Ct., 320 (30 L. Ed., 515).

The latest case upon the subject is that of *Tolerton & Stetson Co.* v. *Anglo-California Bank,* by the supreme court of Iowa. This case repudiates the doctrine laid down in the cases of *Landa* v. *Lattin Bros.,* 19 Tex. Civ. App., 246, 46 S. W., 48, and *Finch* v. *Gregg,* 126 N. C., 176, 35 S. E., 251, 49 L. R. A., 679, relied upon by the complainants in the case at bar, and reaffirms the long-established doctrine insisted upon by defendants. The facts in the Iowa case are almost identical with the facts in the case at bar, and in discussing the Texas and North Carolina cases, the supreme court of Iowa said:

Leonhardt v. Small.

"These decisions proceed upon the theory that the assignee stands in all respects in the shoes of the assignor, and to this broad doctrine we cannot agree. While the rights of such an assignee are to be measured by those of the assignor, his liability is not necessarily the same. . . .

"The rule of the *Landa Case* is founded on the thought that the transfer of the draft and bill of lading to the bank amounted to a sale of the goods, and that the bank as a purchaser undertook to deliver the goods and carry out the canneries company's contract with plaintiff, and because of these facts it necessarily assumed the contract of warranty, although it may have been in fact ignorant that any warranty was made. We do not think, even as the proposition is thus stated, the premises justify the conclusion; but the premises are not correct. The transaction between the canneries company and defendant was not, and could not be, a sale of the goods, for they had already been sold to plaintiff, and it was the intention of all parties that such sale to plaintiff should be consummated by delivery. What was in fact done by the assignment of the draft and bill of lading was to transfer to the bank the canneries company's right to the price, and to give it the possession of the goods as security. Manifestly, while the bank could collect no more than its assignor would have been entitled to, the character of its engagement was not such as to impose upon it any liability to the buyer which it did not expressly assume. . . .

117 Tenn—11

"The two cases cited stand alone in holding the purchaser of a draft with bill of lading attached liable on a warranty made by the assignor, and the line of reasoning pursued to reach this conclusion is so at variance with well-established principles of law that we decline to accept the rule they announce.

"If there is any liability on defendant's part to plaintiff, it must be on the ground that it has received money which it cannot equitably retain. The canneries company could have collected only the price of the goods, less the damages for breach of warranty. More than this has been paid to defendant. If plaintiff has any standing here, it is to recover this excess paid, on the theory just stated. But the draft given the bank was negotiable, and it is a well-established rule of law that, after the holder of a negotiable draft with bill of lading attached has secured an acceptance of such draft from the drawee and consignee he is unaffected by any equities originally existing between such consignee and the seller of the goods. In such a case the liability of the drawee becomes fixed to the payee. *Arpin* v. *Owens,* 140 Mass., 144, 3 N. E., 25; *Flournoy* v. *First Nat. Bank,* 78 Ga., 222, 2 S. E., 547; *Nowak* v. *Excelsior Stone Co.,* 78 Ill., 307; *Law* v. *Brinker,* 6 Colo., 555; *Hays* v. *Hathorn,* 74 N. Y., 486; *Shafer* v. *Bronenberg,* 42 Ind., 89; Randolph, Com. Paper, 1876.

"It is said in the first of these cases: 'The payee of an accepted bill holds the same relation to the acceptor that an indorsee of a note holds to the maker.' Under

Leonhardt v. Small.

this rule, the plaintiff, after an acceptance of the draft, could not have set up against the bank any claim for breach of warranty made by the canneries company, and, if this is the effect of an acceptance, it certainly is of a payment. '

"There was no matter of mutual mistake in this transaction between plaintiff and defendant. The latter had a right, as against the canneries company, to collect the full amount due on the draft from the drawee. The mistake, if any, was as to a matter between plaintiff and the drawer of the draft." 84 N. W., 930, 50 L. R. A., 779-780.

In the cases relied upon by the complainants and followed by the court of chancery appeals, the courts of the States of Texas, North Carolina, and Alabama failed to recognize and apply the well-settled principles of commercial law laid down in the foregoing authorities. They erroneously assumed that the purchase of a draft with a bill of lading attached was a purchase of the goods represented by the bill of lading, and that a presentation of the draft for payment was a contract by the bank to sell the goods to the drawee, when, as a matter of fact, the goods had already been sold by the drawer to the drawee, and, as a matter of law, the bill of lading and goods only passed as collateral security for the draft, which was the only thing the bank bought.

Furthermore, the rule laid down by the supreme court of the United States in the case of *Goetz* v. *Bank of Kansas City,* supra, is necessarily the law in the case

at bar, for another reason than that given in the foregoing authorities. If the sale of the drafts was in fact a sale outright of the bills of lading and in legal effect a sale of the hay to the defendant Banks, as held in the case of *Landa* v. *Lattin Bros.,* 19 Tex., 246, 46 S. W., 48, and in *Finch* v. *Gregg,* 126 N. C., 176, 35 S. E., 251, 49 L. R. A., 679, then the entire transaction was *ultra vires,* and no obligation arising therefrom could be enforced against the banks. National banks may take personal property as security for loans, or as security for bills of exchange purchased by them, but national banks have no power whatever to deal in merchandise of any kind, or in stocks or bonds. Section 5136, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3455] ; *Bank* v. *Kennedy,* 167 U. S., 365, 17 Sup. Ct., 831, 42 L. Ed., 198; *Bank* v. *Hawkins,* 174 U. S., 365, 19 Sup. Ct., 739, 43 L. Ed., 1007.

The complainants are insisting that the banks by purchasing the drafts with the bills of lading attached, agreed in turn to sell to the complainants ten car loads of No. 1 timothy hay, and that each of the banks have in turn breached the contract of sale by delivering an inferior grade of hay, and complainants are seeking to recover damages for the breach of the contracts. Hence this suit is obviously for the enforcement of the *ultra vires* contracts alleged to have been made by the banks.

It was expressly held in the federal cases above cited, and has been held by this court in the case of *Marble Co.* v. *Harvey,* 92 Tenn., 115, 20 S. W., 427, 18 L. R. A.,

Leonhardt v. Small.

252, 36 Am. St. Rep., 71, that no suit can be maintained by either party in the furtherance or affirmance of an *ultra vires* contract — not even by a party who has fully executed the contract on his part. "Such illegal contracts," say the courts, "create no estoppel upon either party."

It is a fact of common knowledge that a large part of the commercial business of the country is carried on through the medium of drafts, and that the immense crops of the South and West are marketed under contracts to draw for the purchase price with bills of lading attached. If the courts shall adopt the rule insisted upon by the complainants, and enforced by the decree of the court of chancery appeals, it will result in destroying this convenient method of handling, moving, and paying for the crops of the country, for the banks will necessarily be compelled to refuse to buy drafts with bills of lading attached, or to handle them as collateral security or otherwise. Banks have neither the time nor the facilities to investigate the genuineness of bills of lading, or the contracts made between their customers with parties residing in other States, and to hold them responsible for the frauds and mistakes of shippers would utterly destroy the negotiability of drafts with bills of lading attached.

The case of *Haas* v. *Citizens' Bank,* supra, has also been adversely commented on by the annotators of the L. A. R. reports, in an exhaustive note, citing many authorities.

With all due deference to the ability and standing of the courts of Alabama, Texas, and North Carolina, which have been cited and relied upon, we are of opinion that the rule which they announce is unsound and contrary to the otherwise unbroken weight of authority.

They proceed upon the incorrect theory that the bill of lading so vests the property in the indorsing banks that they are substituted to all the liabilities of the original drawer, and are the absolute owners of the property, while the true rule is that the indorsing banks hold the bills of lading simply as collateral to secure the drafts drawn against them, but they are not the guarantors of the quantity or quality of the goods shipped under the bill of lading. That is a matter between the drawer and drawee.

There is nothing in this holding contrary to the case of *Ochs* v. *Price*, 6 Heisk. (Tenn.), 484, 488, nor *National Bank* v. *Merchants' Bank,* 91 U. S., 92, 98, 23 L. Ed., 208.

It is insisted for complainants that all but three of the drafts were stamped by the Evansville bank, which first cashed them and took the bills of lading, with this indorsement: "This bank hereby notifies all concerned that it is not responsible, either as principal or agent, for the quantity, quality, or delivery of the goods covered by the bills of lading attached to this draft. [Signed] Citizens' National Bank." And the argument is made that, because three of the drafts were not thus indorsed, it was the intention of the parties that, as to these three

Leonhardt v. Small.

drafts, a different rule should apply; and that the holders or purchasers of these drafts would be guarantors of quality, quantity, and delivery; and that, inferentially at least, the bank omitting to thus indorse the three drafts impliedly said: "We will be responsible for defects in the hay covered by these three drafts, but not that covered by the other drafts."

We think that this contention is not sound.

The indorsement was surplusage, and under it the bank was in no better condition than if it had not been made.

We cannot infer that the bank intended to render itself liable for the three drafts by failing to stamp the restrictive indorsement on them. For all we can know, they were overlooked. But, however that may be, they were put in circulation without any agreement or contract that a purchaser would be liable for the goods, and we must give them the same *status* as any other draft of like character.

We are of opinion that there are errors in the decrees of the chancellor and of the court of chancery appeals, and they are reversed, at complainants' cost.

Proper decree will be entered disposing of the fund attached, if still held.